UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - x
                              :
UNITED STATES OF AMERICA      :  No. 3:18CR90(JAM)
                              :
         vs.                  :
                              :
JOSHUA AMARAL,                :
                              :  New Haven, Connecticut
               Defendant      :  February 5, 2019
                              :
- - - - - - - - - - - - - - - x


GUILTY PLEA


     BEFORE:

        THE HONORABLE JEFFREY ALKER MEYER, U.S.D.J.



A P P E A R A N C E S:


     FOR THE GOVERNMENT:

          OFFICE OF THE UNITED STATES ATTORNEY
               450 Main Street
               Hartford, Connecticut 06103
          BY:  BRIAN P. LEAMING, AUSA


     FOR THE DEFENDANT:

          FROST BUSSERT, LLC
               129 Church Street, Suite 226
               New Haven, Connecticut 06510
          BY:  ROBERT M. FROST, JR., ESQ.




                              Diana Huntington, RDR, CRR
                              Official Court Reporter

1                              **2:08 P.M.**

2              THE COURT:  We're here today for at least what I

3    understand to be a change of plea in the matter of United

4    States of America v. Joshua Amaral.

5              Appearance of counsel, please, for government.

6              MR. LEAMING:  Good afternoon, Your Honor.  Brian

7    Leaming on behalf of the United States.

8              THE COURT:  Good afternoon.

9              MR. FROST:  Good afternoon, Your Honor.

10   Attorney Bob Frost for Mr. Amaral who is seated to my

11   left.

12             THE COURT:  Mr. Amaral, are you doing okay

13   today, sir?

14             THE DEFENDANT:  Yeah, I'm doing all right.

15             THE COURT:  So, as I understand it, Mr. Amaral,

16   your intention today is you're thinking about whether to

17   enter a plea of guilty to two counts of the indictment.

18   As I understand it, one is Count Three of the indictment

19   which charges you with a conspiracy to carry and use a

20   firearm during and in relation to a drug-trafficking

21   crime, and also to Count Four of the indictment that

22   charges you with possessing a firearm during and in

23   relation to a drug-trafficking crime.  Is that what you're

24   here for, sir?

25             THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Okay.  If I could ask you to come on

2    up to the lectern, please, with Mr. Frost.

3          MR. FROST:  Your Honor, I'll just state at the

4    outset Mr. Amaral informed me downstairs that he lost his

5    father yesterday --

6          THE COURT:  Oh, goodness.

7          MR. FROST:  -- from colon cancer, a very young

8    man, 48 years old.  I asked him if, notwithstanding

9    that -- he was given a compassionate release from the

10   state facility to see him at his bedside.  I didn't know

11   that that had been done, but he did have an opportunity to

12   see him.  But I asked him if his mind was clear enough

13   today to proceed in light of that difficult family

14   situation.  And he indicated he's prepared to go forward

15   today.  I wanted to make sure the Court was aware of that.

16         THE COURT:  I appreciate you saying that.

17         Is that correct, Mr. Amaral?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  You're sure about that?

20         THE DEFENDANT:  I'm more than positive.

21         THE COURT:  So the first thing to do is we'll

22   have you put under oath.

23         THE CLERK:  Please raise your right hand.

24         (Defendant sworn.)

25         THE COURT:  Sir, do you understand that, having

1    been put under oath now, that if you were to intentionally

2    fail to tell the truth today, you could be subject to a

3    prosecution for perjury or for false statement?

4            THE DEFENDANT:  Yes, Your Honor.

5            THE COURT:  Okay.  I want to ask you a bit about

6    your background.

7            How old are you, sir?

8            THE DEFENDANT:  I'm 34.  I'll be 35 in July.

9            THE COURT:  You'll be 35 in July, okay.

10           Were you born here in the U.S.?

11           THE DEFENDANT:  Yes, Your Honor.

12           THE COURT:  Where did you grow up?

13           THE DEFENDANT:  Hartford, Connecticut.

14           THE COURT:  How far did you go in school?

15           THE DEFENDANT:  Eleventh grade.

16           THE COURT:  Eleventh, okay.

17           Do you have any kind of postgraduate or

18   post-education of any kind, certification of any kind?

19           THE DEFENDANT:  No, Your Honor.

20           THE COURT:  Is your mind clear as you stand here

21   today?

22           THE DEFENDANT:  Yes, Your Honor.

23           THE COURT:  Are you seeing any kind of a mental

24   health counselor or anything like that?

25           THE DEFENDANT:  No.  It happened over the

1      weekend, but I'm fine.

2                  THE COURT:  You are?

3                  THE DEFENDANT:  Yes.

4                  THE COURT:  Okay.  Where are you housed right

5      now?

6                  THE DEFENDANT:  In Cheshire.

7                  THE COURT:  At Cheshire, okay.

8                  Are you being treated fairly there?

9                  THE DEFENDANT:  Yes.

10                 THE COURT:  Okay.  And how about medications,

11     are you taking any kind of medications?

12                 THE DEFENDANT:  No, Your Honor.

13                 THE COURT:  Mr. Frost, do you have any concerns

14     about your client's competence to enter a plea of guilty

15     if that's what he decides to do today?

16                 MR. FROST:  No, Your Honor.

17                 THE COURT:  Have you read the indictment,

18     specifically those two charges in the indictment that is

19     the subject of a possible plea of guilty today?

20                 THE DEFENDANT:  Yes, Your Honor.

21                 THE COURT:  And I take it you've talked about it

22     with Mr. Frost?

23                 THE DEFENDANT:  Yes, Your Honor.

24                 THE COURT:  Has he answered the questions you

25     have to your satisfaction?

1            THE DEFENDANT:  Yes, Your Honor.

2            THE COURT:  Do you have any concerns about the

3    representation you've been given in this case by

4    Mr. Frost?

5            THE DEFENDANT:  No, Your Honor.  He's been

6    representing very well.

7            THE COURT:  So I want to make sure that you

8    understand basically what you'd be giving up if you do

9    decide to enter a plea of guilty today.

10           The first and most important thing you need to

11   know is you do not have to enter a plea of guilty today if

12   you don't want to.  You could decide that you want to

13   exercise your constitutional right to trial or you could

14   decide that you just want a bit more time maybe to talk to

15   Mr. Frost about it or just to think about it.  Do you

16   understand that?

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  So we've come into court here for

19   this pretty formal proceeding, but the whole purpose of

20   the proceeding is basically for you to make a final

21   decision about what you would like to do.  And it's also

22   for me to make sure that if that final decision is one to

23   enter a plea of guilty that I'm making sure that it's

24   something that you would be doing voluntarily and

25   knowingly and intelligently.  Do you understand?

```
 1              THE DEFENDANT:  Yes, I understand, Your Honor.

 2              THE COURT:  So it's not going to be until the

 3   very end of the proceeding today that I'll ask you if

 4   you're really ready to go forward, okay, and enter a plea

 5   of guilty.  In the meantime, I want to make sure you're

 6   listening very carefully to everything that we talk about

 7   because we're going to do a lot of detail, okay?

 8              THE DEFENDANT:  Yes, Your Honor.

 9              THE COURT:  Basically, if you decide to plead

10   guilty today, what you'd be giving up is a right to a

11   trial.  And of course everybody who is charged with a

12   felony crime has a constitutional right to a trial, a

13   speedy public trial before a jury, and also to have the

14   assistance of an attorney such as Mr. Frost either

15   retained or appointed if you're not able to afford to

16   retain counsel to represent you throughout the whole

17   trial.  Do you understand that?

18              THE DEFENDANT:  Yes, Your Honor.

19              THE COURT:  Now, at the trial, the burden would

20   be on the government.  In other words, the prosecutor,

21   Mr. Leaming, he would have to prove your guilt beyond a

22   reasonable doubt to the jury.  And the burden would be

23   entirely on the government and not on you, because as a

24   criminal defendant you have a presumption of innocence.

25   And what that means is that you don't have to explain
```

1   yourself; it's the government that has to prove its case

2   beyond a reasonable doubt.  Do you understand that?

3                THE DEFENDANT:  Yes, Your Honor.

4                THE COURT:  So have you ever been through a

5   trial before?

6                THE DEFENDANT:  No, Your Honor.

7                THE COURT:  What would happen at a trial is

8   witnesses would come into the courtroom.  They'd come and

9   they'd sit over here at the witness chair, they would

10  testify under oath.  And Mr. Leaming would presumably ask

11  them questions and show them documents and introduce maybe

12  photographs or any sort of evidence that the government

13  believed important.  Then Mr. Frost would have an

14  opportunity to challenge, or cross-examine, each and every

15  one of those witnesses, try to poke holes in their story.

16  And he'd also have an opportunity to try to introduce any

17  kind of evidence that might be helpful to you on your

18  behalf.  And that might mean there might be witnesses who

19  could come in and testify on your behalf or there might be

20  documents or photographs or videos that might be helpful

21  to you.  And he would have an opportunity to present those

22  as evidence in your defense.  And also, if he were having

23  a hard time getting the witnesses to come to court or the

24  documents or other evidence to be produced by whoever has

25  them here in court, he could ask me for a court order to

1  have them produced.  Do you understand that?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  So basically what I'm telling you is

4  it's the government that's got the burden to prove its

5  case beyond a reasonable doubt, but you have the right to

6  present a defense throughout the case, okay --

7          THE DEFENDANT:  Okay.

8          THE COURT:  -- if the case went to trial.

9          Now, part of your defense, if you wanted it to

10  be, could be you could take the witness stand and you

11  could raise your hand and testify under oath.  On the

12  other hand, you could decide that you wanted to exercise

13  your constitutional right not to testify at a trial.

14  Anybody who is charged with a crime has a constitutional

15  right not to testify because just their testimony might

16  even possibly tend to incriminate them.  So they have a

17  right not to testify.  And if you decided not to testify

18  at your trial, I would tell the jury they could not hold

19  that against you.  And the jury would have to focus solely

20  on whether the prosecution has proved its case beyond a

21  reasonable doubt.  Okay?  Do you understand that?

22          THE DEFENDANT:  Yes, Your Honor, I understand.

23          THE COURT:  So if you end up pleading guilty

24  today at the end of today's proceeding, there's not going

25  to be any kind of trial like I just described.  And

1   probably the next time that we would see each other would

2   be for purposes of a sentencing hearing.  Do you

3   understand that?

4           THE DEFENDANT:  Yes, Your Honor.

5           THE COURT:  Okay.  Now, there are certain what

6   the law calls collateral consequences to entering a plea

7   of guilty.  Those things include things like losing the

8   right to vote or to serve on a jury or to hold public

9   office.  You'd certainly lose, as you know, I'm sure, the

10  right to possess any kind of firearm or ammunition.  You'd

11  also have a DNA sample taken from you for purposes of

12  investigation.  And you've told me that you were born here

13  in the United States so it shouldn't be applicable, but if

14  for any reason you were not a United States citizen, then

15  you could be subject to being deported or removed from the

16  country without being able to come back in.  Do you

17  understand that?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  Do you have any questions about what

20  I've told you so far at all?

21          THE DEFENDANT:  No, Your Honor, I understand.

22          THE COURT:  Is there anyone that is, well,

23  threatening you or forcing you to plead guilty if that's

24  what you choose to do?

25          THE DEFENDANT:  No, Your Honor.

1          THE COURT:  Have you seen the plea agreement,

2    sir?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Have you read it?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Every page?

7          THE DEFENDANT:  Every page.

8          THE COURT:  Every word of it?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Do you have any kind of questions

11    about the plea agreement?

12          THE DEFENDANT:  No, Your Honor.

13          THE COURT:  Have you talked to Mr. Frost about

14    it?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  So what I'm going to do is,

17    actually, Mr. Amaral, I'll have you sit down for a moment

18    again, because I'm going to ask Mr. Leaming to actually

19    review the plea agreement.  It's a lengthy complicated

20    document, he's going to go page by page and summarize the

21    essential terms of the agreement.  And if you have any

22    questions at all, you should raise them now, okay?

23          THE DEFENDANT:  Okay, Your Honor.

24          MR. LEAMING:  May we have a moment, Your Honor?

25          THE COURT:  Do you need a recess?

1          MR. LEAMING:  I don't think we need a recess.

2          MR. FROST:  No, Your Honor.

3               (Pause.)

4          MR. LEAMING:  In hindsight, Your Honor, maybe we

5     could take a few minutes.

6          THE COURT:  We'll take a few minutes.

7               (Whereupon, a recess followed.)

8          THE COURT:  Was there anything to take up?

9          MR. LEAMING:  I think we're ready to proceed.

10         I'll put on the record, Your Honor, the issue

11    that arose relates to the guidelines calculation that the

12    parties agreed to.

13         So, first of all, pursuant to the Court's

14    request, the agreement is in the form of a letter, it's

15    dated today, February 5.  It consists of nine pages as

16    well as a rider concerning restitution.

17         A couple of changes, Your Honor --

18         THE COURT:  Let me just make sure, Mr. Amaral,

19    do you have a copy of that letter with you there?

20         I want to make sure that he can follow.

21         THE DEFENDANT:  Thank you, Your Honor.

22         MR. LEAMING:  One small typographical error,

23    Your Honor, which I caught just a moment ago, it has the

24    wrong criminal case number, it's reflected on the plea

25    agreement.

1          THE COURT:  We'll just pen and ink that.

2          MR. LEAMING:  We also made a handwritten change,

3    Your Honor, with respect to Count Four, this would also go

4    on Page 1 in the first substantive paragraph.

5          Mr. Amaral intends to plead guilty to the

6    possession of a firearm in furtherance of a

7    drug-trafficking crime.  Count Four charges both

8    possession, brandishing, and discharge.  Based on

9    counsel's discussions this afternoon, we think technically

10   he'd be pleading to a lesser included offense of

11   Count Four because he's pleading to the possession.

12          THE COURT:  Okay.

13          MR. LEAMING:  So we've handwritten the language

14   after it says "and," underlined, "to the lesser included

15   offense of Count Four."

16          THE COURT:  Okay.  Of possessing a firearm.

17          MR. LEAMING:  Correct.

18          THE COURT:  Okay, great.

19          MR. LEAMING:  And then I'll get to the point,

20   Your Honor, where counsel had a discussion.

21          So first off, on the plea agreement, Page 1 sets

22   forth the offenses to which the defendant intends to plead

23   guilty.  As indicated, it's Count Three of the indictment

24   and the lesser included offense of Count Four which

25   charges him with the possession or the mere possession of

1    a firearm during and in relationship to a drug-trafficking

2    crime.

3              At the bottom of Page 1 and continuing on to

4    Page 2 sets forth the essential elements that the

5    government would be required to prove for each of those

6    offenses.

7              THE COURT:  We might as well just go through

8    those since I'm required to review them.

9              MR. LEAMING:  Certainly.

10             THE COURT:  Could you describe them for the

11   conspiracy charge in Count Three?

12             MR. LEAMING:  Yes, Your Honor.

13             Count Three, there are three essential elements.

14   They're broken down.

15             First:  That two or more persons agree to do one

16   of the following:

17             (a) to use or carry a firearm during and in

18   relation to a drug-trafficking crime which may be

19   prosecuted in federal court; or

20             (b) to possess a firearm in furtherance of a

21   drug-trafficking crime which may be prosecuted in federal

22   court, to wit, conspiracy to possess with intent to

23   distribute controlled substances in violation of 21 U.S.C.

24   Section 846.

25             Second:  That the defendant knew of this

1    agreement or conspiracy; and

2           Third:  That the defendant knowingly and

3    voluntarily participated in or became a part of this

4    agreement or conspiracy.

5           THE COURT:  Okay.  So I take it it would be

6    sufficient for him simply to have agreed to the possession

7    part of the conspiracy.

8           MR. LEAMING:  Correct.

9           THE COURT:  Okay.  All right.

10          And then for Count Four?

11          MR. LEAMING:  Count Four:  First, the defendant

12   committed the drug-trafficking crime charged in Count One

13   of the indictment; two, the defendant knowingly used,

14   carried, and possessed the firearm; and three, that the

15   use, carrying, and possessing of the firearm was during

16   and in relationship to the defendant's drug-trafficking

17   crime.  And as indicated in the parties' agreement, again,

18   the defendant merely possessed the firearm.

19          THE COURT:  Okay.  So just so it would be clear

20   to Mr. Amaral, so it would be clear then that the

21   government could prove Count Four simply by showing

22   possession without showing use and carrying.

23          MR. LEAMING:  Correct.

24          THE COURT:  Do you understand that, Mr. Amaral,

25   the elements there?  Do you have any questions at all

1    about either of these two charges, the elements?

2              THE DEFENDANT:  No, I have no questions.  I

3    fully understand.

4              THE COURT:  Okay.  All right.

5              MR. LEAMING:  Page 2 also sets forth the maximum

6    penalties that would apply.  As to Count Three, there's a

7    maximum penalty of 20 years of imprisonment.  As to

8    Count Four, there's a maximum of life imprisonment with a

9    mandatory term of imprisonment of five years.  It also

10   sets forth the terms of supervised release and applicable

11   fines that would apply to his conviction on both of these

12   offenses as well as a mandatory special assessment of $100

13   per count.

14              Page 3 sets forth --

15              THE COURT:  So the supervised release of up to

16   five years?

17              MR. LEAMING:  Correct.

18              THE COURT:  Okay.

19              MR. LEAMING:  Page 3 sets forth a number of

20   things.  Importantly, it sets forth the various factors

21   that the Court must consider in imposing sentence,

22   including the Sentencing Guidelines.

23              It also sets forth an important promise by the

24   government to recommend to the Court, should the defendant

25   satisfy certain conditions, that it will recommend a

1    three-level reduction for his acceptance of

2    responsibility.  There are certain events, however, that

3    if the defendant engages in, the government reserves its

4    right to withdraw its recommendation.  Those are set forth

5    at the bottom of Page 3 and continuing onto Page 4.

6            In addition, the defendant understands that,

7    notwithstanding the government's recommendation, the

8    Court's not obligated to accept it, and he would not be

9    entitled to withdraw his guilty plea if the Court did not

10   award him acceptance of responsibility.

11           On Page 4, as I indicated, certain events, if

12   they occur, the government reserves its right to withdraw

13   its recommendation.  For example, if he does not terminate

14   or withdraw from criminal conduct or associations; if he

15   engages in conduct which would provide an adjustment for

16   obstructing or impeding the administration of justice; or

17   if he would be released, violating any condition of his

18   release.  In addition, if he were to after today, if he

19   were to enter a guilty plea, attempt to withdraw that

20   guilty plea, the government reserves its right to withdraw

21   its acceptance recommendation to the Court.

22           The guidelines stipulation -- and this was the

23   subject of our earlier discussion and need for a recess --

24   as to Count Three, the parties have calculated what they

25   believe to be the appropriate Sentencing Guidelines

1    calculation based upon the various factors and specific

2    facts of this case, and the parties have also predicted

3    that the defendant falls within Criminal History

4    Category V.

5           Based upon Count Three, the parties believe that

6    the applicable Sentencing Guidelines range is 70 to 87

7    months of imprisonment and a fine range of $15,000 to

8    $150,000.

9           Count Four, pursuant to the guidelines,

10   determine that the Sentencing Guidelines range is the

11   mandatory minimum imposed by statute, which is 60 months.

12          As set forth on the following section on Page 5,

13   the parties believe that these offenses would be grouped

14   such that the applicable guidelines range would be the

15   guidelines range which is the higher of the two, which is

16   the one that applies to Count Three.

17          The issue the parties wanted to put on the

18   record and make clear, when you read the statute, that is

19   Section 924(c) of Title 18, it could be interpreted that

20   whatever sentence is imposed there must run consecutive to

21   any other sentence imposed by the Court.  I don't believe,

22   and I believe Attorney Frost is of the same opinion, that

23   it would apply to an underlying conspiracy involving the

24   same offense conduct.  So it's the parties' intention to

25   give effect to this agreement.  If, however, the Court

1    were to determine that the five-year mandatory sentence

2    must run consecutive to the sentence of Count Three, it

3    would be the parties' recommendation that the Court vary

4    or depart on the Count Three calculation to give effect to

5    whatever the appropriate sentence --

6              THE COURT:  -- would have been as if they had

7    been treated the same and treated concurrently.

8              MR. LEAMING:  Correct.

9              THE COURT:  Mr. Frost, do you have anything to

10   add about that?  That's an important point.

11             MR. FROST:  Yes, Your Honor.  And that was

12   something I wanted to make sure we had something on the

13   record about that.  And I asked for the recess because I

14   wanted an opportunity to discuss that with Mr. Amaral so

15   that he understood fully what we were about to put on the

16   record.  He does.  It's my understanding that he is

17   comfortable with proceeding based on an understanding that

18   Mr. Leaming just placed on the record about the parties'

19   intent which is the intent of the agreement.

20             THE COURT:  Right.

21             Mr. Amaral, do you understand, then, that the

22   parties have agreed or you have entered into an agreement

23   in which you agree the applicable guidelines range in this

24   case would be 70 to 87 months of imprisonment; do you

25   understand that, sir?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  And do you understand that the

3   government does not intend to seek, if I'm saying this

4   correctly, a sentence on one of the counts that runs

5   consecutive to the sentence on the other count?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Okay.

8          MR. FROST:  That's correct, Your Honor.

9          THE COURT:  Thank you.

10          MR. LEAMING:  Also set forth in that section,

11   Your Honor, the parties are also agreeing, however, and

12   just to make sure this is clear, that neither an upward or

13   downward departure from the range is warranted and that a

14   sentence within that range is reasonable, that is the

15   70-87 months range.

16          THE COURT:  Yes.

17          MR. LEAMING:  The defendant also understands

18   that he is not bound by this agreement and if the Court

19   were to calculate a different guidelines range or impose a

20   sentence outside that range, he would not be entitled to

21   withdraw his guilty plea.

22          THE COURT:  Okay.

23          MR. LEAMING:  On the bottom of Page 5 and

24   continuing onto Page 6 sets forth various and important

25   waivers of his rights to challenge his conviction and a

1    limited right to challenge his sentence.  Based upon his

2    guilty plea, the defendant waives any right to challenge

3    the conviction should he proceed and enter guilty pleas

4    today, and he does so knowingly and voluntarily.  As to

5    the limited waiver on his right to appeal his sentence,

6    the defendant agrees that he will not appeal or

7    collaterally attack his sentence provided it does not

8    exceed 87 months of imprisonment, a five-year term of

9    supervised release, a $200 special assessment, and a

10   $150,000 fine.

11              THE COURT:  So, sir, do you understand that --

12              THE DEFENDANT:  Yes.

13              THE COURT:  -- in terms of the limit on your

14   right to appeal or to file any other kind of legal

15   challenge to the conviction or sentence?

16              THE DEFENDANT:  Yes, Your Honor.

17              MR. LEAMING:  At the bottom of Page 6 there are

18   various waivers of rights which the Court has already

19   reviewed with him.  Those are the various rights that he

20   would have if he were to choose to proceed and have a

21   trial.

22              On the top of Page 7 there's an additional

23   waiver of a statute of limitations defense.  This would

24   apply if for any reason his conviction was vacated or set

25   aside in the future, he waives any statute of limitations

1    defense he may have at that time.

2          Page 7 also sets forth the defendant

3    acknowledges he's entering into this agreement and

4    pleading guilty freely and voluntarily because he is

5    guilty, and no one has forced, threatened, or coerced him

6    in any way, and there are no other promises or benefits

7    other than what's set forth in the agreement.

8          Bottom of Page 7 sets forth the defendant's

9    understanding that he understands the scope of the

10   agreement is limited to the undersigned parties and does

11   not bind any other federal, state, or local authority.

12         Page 8 sets forth the various collateral

13   consequences that will result based upon his conviction of

14   a felony and a federal drug felony as well.

15         Page 8 also contains an important promise by the

16   government that this will satisfy his federal criminal

17   liability for the conduct that's set forth in the

18   indictment.  After sentencing, the government will move to

19   dismiss the remaining counts against him which are

20   Counts One, Six, Eighteen, and Nineteen.

21         The defendant acknowledges that if he violates

22   any term or condition of the agreement, fails to appear

23   for sentencing, or engages in further criminal activity,

24   the government may void all or part of this agreement.

25         Finally, there are no other promises or

1  agreements or conditions other than what's set forth in

2  this plea agreement letter and none will be entered unless

3  set forth in writing by the parties.

4           Lastly, there is a rider concerning restitution.

5  I had our victim advocate notify the two victims in the

6  case about today's proceeding and we'll continue to keep

7  them apprised of any future court proceedings.

8           THE COURT:  And I take it those victims are in

9  accord with the essential terms of the plea agreement?

10          MR. LEAMING:  They've expressed really no

11  opinion, Your Honor.  As you may recall, one of the

12  co-defendants pled earlier.  I informed them of what the

13  plea agreement would look like and what the Sentencing

14  Guidelines range was and the charges to which the

15  defendants have pled guilty, and they basically haven't

16  expressed an opinion like that's good or not, they said

17  okay.

18          THE COURT:  But they're in the loop?

19          MR. LEAMING:  Yes.

20          THE COURT:  Will they be told about any

21  sentencing?

22          MR. LEAMING:  Absolutely.

23          THE COURT:  Mr. Amaral, do you have any

24  questions at all about the plea agreement?

25          THE DEFENDANT:  No, Your Honor.

1          THE COURT:  Do you understand that the plea

2    agreement is your entire deal or agreement with the

3    government here, you understand that?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  You can't be relying on anything

6    that you think is any other -- there's no other side

7    agreements or anything else other than what's been stating

8    in writing in the plea agreement; is that right?

9          MR. FROST:  Your Honor, there is one other

10   issue, and I had flagged for him that this issue might

11   come up.  He has a number of pending state cases in

12   Hartford Superior Court.  And it's the expectation of the

13   parties -- and I know Mr. Leaming has been in contact with

14   the state's attorney in Hartford -- that upon his

15   acceptance of a plea in this court, that those matters

16   will be nolle'd.  And so that has not happened yet, but

17   that was certainly part of Mr. Amaral's understanding as

18   to why he would be entering into this plea agreement under

19   the terms as we've just described.

20          THE COURT:  I see.

21          So Mr. Leaming of course doesn't control, I take

22   it, what the state court prosecutors would do.  I'm not

23   sure how much he's able to rely on that.  I guess he can

24   rely on the representation in good faith that it's his

25   understanding that that will happen, but I'm not sure that

1   he can be guaranteed, can he?

2           MR. FROST:  I think that's probably accurate.

3   My understanding is that representations have been made,

4   and in fact Mr. Amaral was in court a couple weeks ago.  I

5   didn't represent him in the Hartford Superior Court, but

6   they are waiting on --

7           THE COURT:  On what happens here?

8           MR. FROST:  -- what happens here in this court.

9   There are very few guarantees in life.  I think, as the

10  Court has characterized, we have a good faith

11  representation from the state's attorney that that is in

12  fact what they will do, provided Mr. Amaral does enter

13  into the plea agreement and resolves his case here.

14          THE COURT:  And did you say when the next court

15  date is?

16          MR. FROST:  He actually has a state court

17  appearance tomorrow.

18          THE COURT:  It's tomorrow, okay.

19          MR. FROST:  He had a prior court date where this

20  issue came up where they're waiting confirmation that he

21  has resolved his case here.

22          THE COURT:  Anything to add on that?

23          MR. LEAMING:  I have been in communication with

24  the State's Attorney's Office, Your Honor.  Some of the

25  pending charges are the same course of conduct to which he

 1    intends to plead guilty today.  He has some other matters.

 2    Frankly, when I communicated to the state what the

 3    proposed plea agreement was going to look like, they

 4    indicated that they planned on disposing with nolles or

 5    termination of probation of his pending matters and that

 6    they would do so after he enters a guilty plea here which

 7    is, I think as Attorney Frost indicated, why the parties

 8    are binding themselves to the Sentencing Guidelines range.

 9              THE COURT:  Understood.  That's helpful, thank

10    you.

11              Mr. Amaral, do you have any other questions at

12    all about the plea agreement?

13              THE DEFENDANT:  No, Your Honor.

14              THE COURT:  I guess if the parties can go ahead

15    and sign the plea agreement and hand it up to the Clerk of

16    Court for filing.

17              And Mr. Amaral, if you could come on back to the

18    lectern as well.

19              MR. FROST:  Your Honor, the parties have

20    executed the plea agreement.  If I can approach?

21              THE COURT:  Please.

22              So the plea agreement appears to be in order.  I

23    see it's signed as well by Mr. Frost, Mr. Amaral, and

24    Mr. Leaming, and it's accepted and also subject to the

25    oral representations that have been made in court today

1     that we've discussed on the record.

2              MR. FROST:  Thank you, Your Honor.

3              THE COURT:  I want to make sure that you

4     understand, Mr. Amaral, basically the sentencing process

5     that would happen if you do end up pleading guilty today.

6              Under the law, a judge is required to consider a

7     number of different factors when I decide what sentence to

8     impose.  I have to look at what's appropriate to reflect

9     the seriousness of a crime or two crimes, as we have here;

10    what would promote respect for the law; what is a just

11    punishment.  I also have to be thinking about what's

12    appropriate to discourage or deter you or, frankly, others

13    from doing something like having a firearm in connection

14    with a drug offense.  And I have to think about

15    rehabilitation; in other words, what can the Court do to

16    help you set things right in your life.  It sounds to me

17    from the plea agreement you've had some issues in the

18    criminal justice system before.  And the issue really is

19    now, what can be done to help you.  It might be job

20    training.  I'm not sure you told me you got your GED yet.

21             THE DEFENDANT:  No.

22             THE COURT:  It could be something like GED, it

23    could be other vocational training.  A lot of the guys who

24    have finished their sentencing, they do things like they

25    go get a CDL or they get other kind of specialized

 1   training.  It could be helping -- and I don't know enough

 2   about you, but you might have possibly a substance abuse

 3   issue or something going on.  If that's so, I'd be

 4   concerned about making sure you're getting counseling and

 5   treatment for that kind of thing.  If there were any kind

 6   of mental health issues, I'd be concerned and imposing a

 7   sentence to make sure you get support for that.

 8   Basically, that's what Congress tells me I have to

 9   consider in terms of the purposes of what a sentence is.

10          The way I decide upon what sentence to impose in

11   a case depends upon a lot about what I learn about

12   somebody in terms of their whole life story in a way.  And

13   the way that that happens is in a few weeks' time from

14   now, you and Mr. Frost would sit down with a probation

15   officer who would interview you, a very detailed kind of

16   life story interview.  And that interview would be written

17   up in a report, a pretty detailed report.  And you would

18   get a copy of that report through Mr. Frost and have an

19   opportunity to look through the report and make sure it's

20   got everything you think is important for the Court to

21   know.  If you had family members or other supporters who

22   wanted to write or say something on your behalf, they'd be

23   welcome to tell that to the Probation Office or write a

24   letter to Mr. Frost who would communicate to the Court.

25   The government, the prosecutor, also talks to the

 1    probation officer and gives a description of the

 2    government's version of what happened here.  And all of

 3    this goes into this report that you get a copy of, you get

 4    to review it.  If there's anything missing or if there's

 5    something wrong in there, you'd tell Mr. Frost, and it

 6    would be corrected.  Or if it's subject to a dispute of

 7    some sort, we'd have a court hearing about it to make sure

 8    that no sentence was imposed on the basis of something

 9    that was wrong in terms of information.

10            About two weeks before a sentencing hearing, and

11    the sentencing would probably occur in a few weeks' time,

12    probably I think more than likely late April, Mr. Frost

13    would submit a sentencing brief on your behalf, basically

14    an argument.  He's very experienced, so he would submit

15    that kind of argument to the Court about what I should be

16    thinking about in terms of what's an appropriate sentence.

17    Mr. Leaming would also do the same thing.  Then we would

18    get together here back in this court for a full sentencing

19    hearing in which I'd hear from the lawyers from both sides

20    but I'd also hear from you, if you wished, and any family

21    members or supporters.  And then I would try my best, in

22    light of everything I just told you about, to impose a

23    sentence.  Do you understand that?

24            THE DEFENDANT:  Yes, Your Honor.

25            THE COURT:  Now, part of what I have to think

1    about is the Sentencing Guidelines.  And you recall

2    there's a pretty complicated calculation in the plea

3    agreement about the Sentencing Guidelines here.  But

4    basically you've agreed with the government about how the

5    Sentencing Guidelines should apply in this case.  And

6    you've agreed that you won't ask for a lower sentence than

7    what the Sentencing Guidelines say.  Do you remember that,

8    sir?

9         THE DEFENDANT:  Yes.  Seventy months, right?

10        THE COURT:  I have to consider, and I always do,

11   in good faith the parties' agreement about what the

12   sentence should be, but as the plea agreement explains,

13   it's not something that's binding or obligatory on the

14   Court.  So it's possible the Court could impose a sentence

15   that's different than what the parties have agreed to.  Do

16   you understand that, sir?

17        THE DEFENDANT:  Yes, Your Honor.

18        THE COURT:  Of course, I could not sentence any

19   higher than what the very maximum sentence is in the case.

20   As you recall from the plea agreement, the very maximum

21   sentence that could be imposed in the case on one of the

22   counts is up to life imprisonment, right?

23        THE DEFENDANT:  Yes, Your Honor.

24        THE COURT:  And that same count says at least

25   five years of imprisonment.  So I can't impose a sentence

1    possibly that's less than five years in this case.

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  For the other count, it's up to

4    20 years of imprisonment; do you understand that?

5              THE DEFENDANT:  Yes.

6              THE COURT:  After you've served any term of

7    imprisonment that might be imposed, you'd also be subject

8    to a term of what's called supervised release.  It's kind

9    of like parole or probation with a lot of reporting

10   conditions, but they're important there.  Do you

11   understand that?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  That could be up to five years.

14             And then there's a possibility if for some

15   reason you turn out to be a wealthy person, I don't know

16   that that's so, but there's a possibility that you could

17   have a criminal fine imposed.  And of course I have to

18   impose that special assessment, the $200 in the case.  Do

19   you understand all that?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  So I tried to explain pretty much

22   about what would be considered at sentencing.  Do you have

23   any questions at all about this?

24             THE DEFENDANT:  No, Your Honor.

25             THE COURT:  Okay.  In terms of the whole process

1    going forward?

2              THE DEFENDANT:  No, besides --

3              MR. FROST:  So there's the issue once the state

4    case that he's referring to is resolved, there's a federal

5    statute that applies once he is sentenced by the Court to

6    determining any pretrial custody credit and how that gets

7    applied by the BOP --

8              THE COURT:  Yes.

9              MR. FROST:  -- once he's sentenced.  I've

10   referred to that statute and covered that statute with

11   him.  My reading of the statute, and I think it's pretty

12   clear, is that he would be entitled to his custody up

13   until the time of his sentencing, but that's a BOP issue

14   in terms of calculating.

15             THE COURT:  And that's usually because the

16   conduct is essentially the same --

17             MR. FROST:  Correct.

18             THE COURT:  -- that was the basis for the state.

19             MR. FROST:  That issue, and also the fact that

20   the pretrial custody credit would not be applied anywhere

21   else.

22             THE COURT:  Because the state charges would be

23   nolle'd.

24             MR. FROST:  Correct.

25             If that were not the case, then there would be

1    an issue where that pretrial custody credit if it had been

2    applied to a state sentence, then he wouldn't necessarily

3    have that credit applied on his federal sentence.  So

4    that's the federal statute that I was covering with him.

5              THE COURT:  That's important.

6              MR. FROST:  And it has been a focus of our

7    discussions, so I think that's what he was referring to.

8              THE COURT:  How long have you been in custody?

9              THE DEFENDANT:  As of today, 17 months.

10              THE COURT:  Seventeen months?

11              THE DEFENDANT:  Yes.

12              THE COURT:  And Mr. Leaming, is it your

13    understanding that the government won't oppose him being

14    given credit for the time he's been in custody the last 17

15    months?

16              MR. LEAMING:  Correct.  Attorney Frost and I

17    have had discussions about that.

18              To give the Court further clarification, we had

19    Mr. Amaral arrested on the state charges during our

20    federal investigation for security issues and some

21    drug-related conduct.  So he's essentially been in state

22    custody based upon our investigation, Your Honor.  So my

23    expectation is that all of the charges will be nolle'd and

24    all the time that he's been in since I think it was

25    September of 2017 will go to his federal sentence.

1          THE COURT:  I see.  Okay.  That's helpful to

2    know.

3          That's a very good question.  Any other

4    questions at all, sir?

5          THE DEFENDANT:  No, that's it, Your Honor.

6          THE COURT:  Okay.  So we talked a bit before

7    about what are the elements of both of these crimes.  And

8    what I'm going to do is I'm going to ask Mr. Leaming to

9    summarize basically what the government's proof would be

10   at trial if the case did go to trial.  And after he's

11   done, I'll ask you if you agree with it, okay?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Mr. Leaming.

14          MR. LEAMING:  If the case were to proceed to

15   trial, the government would offer testimony from various

16   law enforcement and civilian witnesses and evidence

17   obtained through physical and electronic surveillance, as

18   well as the defendant's own statements, as well as City of

19   Hartford video cameras to prove the following:  On

20   April 28, 2017, multiple City of Hartford surveillance

21   cameras captured a shooting that occurred at the

22   intersection of Franklin Avenue and Barker Street in

23   Hartford.

24          Evidence would reveal that Wilson Velez, also

25   known as Wiso, who had been a Connecticut regional officer

1   for the Latin Kings street gang, had received information

2   about a person selling drugs in that area.  Velez met with

3   four other Latin Kings members, to include Mr. Amaral.

4   During this meeting, Mr. Velez provided Mr. Amaral with a

5   firearm.

6         The five men, including Mr. Velez and the

7   defendant, drove together to Franklin Ave. and Barker

8   Street.  Eventually they all exited the vehicle and

9   confronted a person who has been identified as Victim A.

10   Victim A would testify that he was selling drugs at that

11   location, was confronted by multiple individuals who

12   identified themselves as Latin Kings and who told him not

13   to be selling drugs in that area without their

14   authorization.  Velez and other Latin Kings, to include

15   Mr. Amaral, surrounded the victim.  Once he was

16   surrounded, one of the other co-defendants, Angel Cabrera,

17   struck Victim A with what appeared to be a closed fist.

18   Victim A attempted to run and was pursued by Mr. Amaral

19   and others.

20         As they chased Victim A, gunfire erupted.  A

21   second victim identified as Victim B, who was a friend of

22   Victim A, principally exchanged gunfire with co-defendant

23   Miguel Claudio; however, it appeared that in the initial

24   exchange of gunfire, Mr. Amaral was struck in the leg by a

25   bullet.  Mr. Amaral fled to the other side of the street

1    and took cover.  The video records him running down the

2    street and appears to be holding a firearm to which he

3    later admitted to Hartford police that in fact he did have

4    a firearm.

5            Based upon the foregoing, the government could

6    prove that Mr. Amaral, Mr. Velez, and others had entered

7    into an agreement to possess a firearm during and in

8    relationship and in furtherance of a drug-trafficking

9    crime, and that Mr. Amaral did in fact possess a firearm

10   in furtherance of that conspiracy.  Thank you.

11           THE COURT:  Thank you.

12           Mr. Amaral, you heard the description there.  Is

13   that what happened, sir?

14           THE DEFENDANT:  Yes, Your Honor.

15           THE COURT:  Is there anything else you want me

16   to know about what happened that day?

17           THE DEFENDANT:  Just that the incident occurred.

18   And I got struck.  I ain't never discharged my firearm at

19   the victim.

20           THE COURT:  But you had the firearm?

21           THE DEFENDANT:  Yes, I did.

22           THE COURT:  And you knew it was in connection

23   with drug dealing?

24           THE DEFENDANT:  Yes, Your Honor.

25           THE COURT:  Okay.

1          So at this point, I'm satisfied in terms of the

2    factual basis here.

3          And Mr. Amaral, I don't have more questions for

4    you at this point except to ask you if you're ready to

5    proceed.  At this point you could take another break if

6    you'd like and talk with counsel, or if you changed your

7    mind you don't have to go forward with this, or you can

8    decide you'd like to go ahead and enter pleas of guilty.

9    What would you like to do?

10         THE DEFENDANT:  I'd like to go ahead and enter

11   pleas of guilty.

12         THE COURT:  If the Clerk of Court could please

13   put Mr. Amaral to plea.

14         THE CLERK:  In the case of United States of

15   America v. Joshua Amaral, Criminal No. 3:18CR90(JAM), as

16   to Count Three of the indictment charging with you a

17   violation of Title 18 U.S.C. Section 924(c) and 924(o),

18   what is your plea?

19         THE DEFENDANT:  Guilty.

20         THE CLERK:  As to Count Four of the indictment

21   charging you with a violation of Title 18 U.S.C.

22   Section 924(c)(1)(A)(i),(ii), and (iii), what is your

23   plea?

24         MR. FROST:  Your Honor, on that, it probably

25   should be just to Roman numeral (i).

```
 1                THE COURT:  I might have misheard.  On
 2    Count Three is just the conspiracy charge, right?
 3                MR. FROST:  The charge itself, the 924(o) is a
 4    conspiracy charge.
 5                THE COURT:  Okay, great.  And then Count --
 6                THE CLERK:  In violation of Title 18 U.S.C.
 7    Section 924(c) --
 8                MR. FROST:  -- (c)(1)(A)(i) --
 9                THE COURT:  (i) but not (ii) and (iii).
10                THE CLERK:  -- and Title 18 U.S.C. Section 2(a),
11    what is your plea?
12                THE DEFENDANT:  Guilty.
13                THE CLERK:  Your Honor, the defendant pleads
14    guilty to Count Three and Four of the indictment.
15                THE COURT:  Okay.
16                So I will make the following findings:
17                That Mr. Amaral is competent to enter a plea of
18    guilty today.
19                I find that he knows of his right to plead not
20    guilty and to a trial and all the related rights that I
21    described to him.
22                I also find that he knows the elements and the
23    nature of both of the charges to which he's entering the
24    plea of guilty.
25                I find that he knows the maximum possible
```

1   sentence that the Court might impose and the minimum, as I

2   described it to him, in terms of imprisonment, supervised

3   release, monetary fine, restitution, and payment of a

4   special assessment.

5           I find that he knows of the Court's obligation

6   to consider the sentencing statute and the purposes that I

7   talked to him about, and also the Sentencing Guidelines.

8           And I find that he knows of and has accepted the

9   terms of the plea agreement that waive his right to appeal

10  or file some other kind of legal challenge to his

11  conviction or to the sentence subject to those very

12  specific conditions that are set forth in the plea

13  agreement concerning that waiver.

14          I also find that his plea today is voluntary,

15  it's not the result of any kind of force, threats, or any

16  promise other than those set forth in writing in the

17  parties' plea agreements and also orally on the record

18  during today's proceedings.

19          I find as well that there's a factual basis, a

20  clear factual basis for the pleas of guilty to both

21  Count Three and the lesser included charge of Count Four.

22          So the case is now referred to the Probation

23  Office for a presentence investigation.

24          In terms of scheduling, Mr. Amaral, I've got --

25  we're going to schedule your sentencing for April 30, the

 1    last day of April, at 10:00 a.m. that morning.  And

 2    working backwards from there, the first Presentence Report

 3    will be due by March 19, which basically means the

 4    Probation Office will be in touch with you in the next few

 5    weeks to meet with you and write up that draft report.

 6    You'll get a copy of that initial report somewhere close

 7    to March 19.  And by April 2, any objections need to be

 8    filed to the Presentence Report, and then the final

 9    Presentence Report April 12.

10              Mr. Frost, if you could file a sentencing memo

11    by April 16.  And Mr. Leaming, by April 23.  Again, in

12    anticipation of getting together on April 30.

13              Does that sound okay to the parties?

14              MR. FROST:  Yes, Your Honor.

15              MR. LEAMING:  Yes, Your Honor.

16              THE COURT:  Mr. Amaral, do you have any other

17    questions at this point?

18              THE DEFENDANT:  No, Your Honor.

19              THE COURT:  All right.

20              Anything else to take up?

21              MR. FROST:  No, Your Honor.

22              MR. LEAMING:  No, Your Honor.

23              THE COURT:  Thank you all.  Stand in recess.

24                   (Proceedings adjourned at 3:00 p.m.)

25

1

2                       C E R T I F I C A T E

3

4        RE: UNITED STATES OF AMERICA v. JOSHUA AMARAL

5                        No. 3:18CR90(JAM)

6

7           I, Diana Huntington, RDR, CRR, Official Court

8    Reporter for the United States District Court for the

9    District of Connecticut, do hereby certify that the

10   foregoing pages 1 through 40 are a true and accurate

11   transcription of my shorthand notes taken in the

12   aforementioned matter to the best of my skill and ability.

13

14

15

16

17                    _____/s/_____

18                    DIANA HUNTINGTON, RDR, CRR
                           Official Court Reporter
19                    United States District Court
                       141 Church Street, Room 147
20                    New Haven, Connecticut 06510
                           (860) 463-3180
21

22

23

24

25